IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| STEVEN DAVIS,<br><br>      Plaintiff,<br><br>v.<br><br>WINDMOELLER & HOELSCHER CORPORATION,<br>Individually, and d/b/a GARANT MASCHINEN<br><br>      Defendant. | No. 1:08-cv-2244<br><br>Judge John W. Darrah<br><br>Magistrate Judge Jeffrey Cole |

**DEFENDANT'S MOTION TO TRANSFER VENUE
AND MEMORANDUM OF LAW IN SUPPORT**

In accordance with 28 U.S.C. § 1404(a), Defendant Windmoeller & Hoelscher Corporation ("Windmoeller") by its attorneys, Swanson, Martin & Bell, LLP, file this Motion to Transfer Venue and Memorandum of Law in Support and would show the Court as follows:

**I. Introduction and Grounds for Motion**

On April 4, 2008, the Plaintiff, Steven Davis, filed suit against Windmoeller in the 12th Judicial Circuit Court of Will County, Illinois asserting claims for negligence and product liability. A true and correct copy of Plaintiff's Complaint at Law is attached hereto as Exhibit A. Windmoeller timely removed this suit to the Northern District of Illinois because diversity of citizenship exists between Plaintiff, who is a citizen of Illinois, and Defendant, who is a citizen of Delaware and Rhode Island, and the amount in controversy exceeded $75,000 exclusive of interests and costs.[1] Plaintiff's claim in this suit does not, however, have any substantive connection to the Northern District of Illinois.

---

[1] Windmoeller & Hoelscher Corporation is incorporated in the State of Delaware and has its principal place of business in the State of Rhode Island.

Plaintiff's claim arises from an incident occurring at Drumheller Bag Corporation's ("Drumheller") plant located at 1114 Southwest Adams Street City of Peoria, County of Peoria, State of Illinois, which is Plaintiff's place of employment. Mr. Davis allegedly injured his hand while attempting to clean and grease a machine known as an "amv 2160" tuber machine. Plaintiff brought this lawsuit in Will County, Illinois despite the fact that the alleged injury occurred in Peoria County, the "amv 2160" machine is located at Drumheller's plant in Peoria County, all material witnesses reside in Peoria County, and Plaintiff himself resides in Peoria County. The Central District of Illinois embraces Peoria County.

## II. Standards for Transfer

A district court may transfer a civil action to any district "[f]or the convenience of parties and witnesses, in the interest of justice . . . where it might have been brought." 28 U.S.C. § 1404(a). The decision to transfer is committed to the sound discretion of the district court and "1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The Supreme Court has long recognized the importance of Section 1404(a) transfers in the federal system, emphasizing that the statute was created because the "the broad venue provisions in federal Acts often resulted in inconvenient forums." *Ferens v. John Deere Co.*, 494 U.S. 516, 522 (1990).

Section 1404(a) "reflects the increased desire to have federal civil suits in the federal system at the place called for in the particular case by considerations of convenience and justice." *So-Comm, Inc. v. Reynolds*, 607 F. Supp. 663, 666 (N.D. Ill. 1985). A party moving for transfer must show: "(1) that venue is proper in the transferor district; (2) that venue is proper in the transferee district; and (3) that the balance of convenience and interests of justice strongly

favor transfer." *Newcourt Linc Financial, Inc. v. Allwire, Inc.*, 1997 WL 119973 (N.D. Ill. March 14, 1997).

The factors taken into consideration by the Court in evaluating the convenience factor include: (1) the plaintiff's choice of forum; (2) the site of material events; (3) the access to evidence; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in each forum. *Trustmark Ins. Co. v. All American Life Ins. Co.*, 2004 WL 2967529 (N.D. Ill. December 2, 2004).

The most compelling factor, however, is whether the transfer will aid the "interest of justice." *Id.* at *4. This factor "embraces the traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses." *Brandon Apparel Group v. Quitman Mfg.*, 42 F. Supp.2d 821, 834-35 (N.D. Ill. 1999). In determining the interests of justice, the court should consider: "(1) the speed at which the case will proceed; (2) the court's familiarity with the law that governs the action; (3) the relation of the locale to the controversy and the desirability of settling the matter in that forum; and (4) whether similar cases are pending in district which the case is sought to be transferred." *C & F Packing Co.*, 1993 WL 278504, at *3 (N.D. Ill. July 22, 1993)

### III.  TRANSFER TO THE CENTRAL DISTRICT OF ILLINOIS IS PROPER

**A.  Venue is proper in the Northern District of Illinois, as well as in the Central District of Illinois**

When the Court has diversity jurisdiction, such as here, venue is proper in: (a) "a judicial district where any defendant resides, if all defendants reside in the same state;" (b) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred;" or (c) "a judicial district in which any defendant is subject to personal jurisdiction at the time the

action is commenced, if there is no district in which the action may be otherwise brought." 28 U.S.C. § 1391(a) (2005).

Although no substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Northern District of Illinois, venue is proper here because Windmoeller had sufficient contacts to subject it to personal jurisdiction in the Northern District of Illinois at the time Plaintiff filed suit and at the time Windmoeller removed this action to the Northern District of Illinois. Venue is also proper in the Central District of Illinois because a substantial part of the events giving rise to Plaintiff's claim occurred there, all relevant witnesses and documents are located there, and Defendant Windmoeller was subject to personal jurisdiction there.

**B.    The Relevant Convenience Factors Favor Transfer to the Central District of Illinois**

    **1.    Plaintiff's choice of forum is not controlling, and the convenience of the parties favors transfer to the Central District of Illinois.**

The plaintiff's choice of forum, while a factor, is not dispositive when analyzing the convenience of the parties. *Hotel Constructors, Inc. v. Seagrave Corp.*, 543 F.Supp. 1048, 1050 (N.D. Ill. 1982). Furthermore, a plaintiff's choice of forum receives less deference where the chosen forum has no practical connection to the events giving rise to the claim. *Avco Corp. v. Progressive Steel Treating, Inc.*, 2005 WL 2448379 (N.D. Ill. Oct. 6, 2005) (stating the plaintiff's forum is given less consideration if either the plaintiff is foreign to the jurisdiction or the forum has no substantial connection with the litigation); *Houck v. Trans World Airlines, Inc.*, 947 F. Supp. 373, 375-76 (N.D. Ill. 1996) (where plaintiff and decedent in plane crash were not residents of forum and the conduct and events giving rise to the plaintiff's claims did not occur in forum, the plaintiff's "choice to initiate [the] action in the Northern District of Illinois is accorded virtually no weight").

Here, Plaintiff's claims have no substantive connection to the Northern District of Illinois. Plaintiff does not allege that any of the events giving rise to his claim occurred in the Northern District of Illinois, because no such events or omissions did.[2] Plaintiff's alleged accident occurred in Peoria County, the subject machine rests in Peoria County, and Plaintiff is a resident of Peoria County as well as all relevant witnesses. Furthermore, Windmoeller has virtually no ties to any county in the Northern District of Illinois. Plaintiff's only basis for venue in the Northern District arises from his allegation that Windmoeller conducts business and maintains a sales office located in Will County.[3] However, the salesman Plaintiff refers to in his complaint, William Long, sells only printing machines, and in fact, has never sold the tubing or bagging machines that Drumheller operates at its Peoria County plant. See Affidavit of William Long Attached hereto as Exhibit B. Thus, Mr. Long has no relevant information concerning the subject machine. Although Mr. Long's presence in the Northern District may be enough for personal jurisdiction, venue is more appropriate in the Central District.

2. **The Accessibility of witnesses and Other Evidence Favors the Central District of Illinois.**

   a. <u>The convenience and accessibility of witnesses favor transfer to the Central District of Illinois</u>

Despite Plaintiff's choice of forum, the relative convenience of the witnesses is often the most important factor when considering a motion to transfer under Section 1404(a). See *Dunn v. Soo Line R.R. Co.*, 864 F. Supp. 64, 65-66 (N.D. Ill. 1994) (finding factor weighed in favor of transfer because vast majority of witnesses lived outside forum).

Here, that factor weighs in favor of transfer to the Central District of Illinois, which is a more convenient forum for this action because most, if not all, nonparty witnesses to the alleged

---

[2] Plaintiff's Complaint at ¶¶ 2-14.
[3] Plaintiff's Complaint ¶ 1-2.

5

accident reside in Peoria County, including Plaintiff. Windmoeller expects to call several key witnesses from Drumheller currently residing in the metropolitan Peoria area, including:

- Michael Brown, a back end operator of the "amv 2160" who was also working on the "amv 2160" tuber machine at the time of Plaintiff's accident, and is expected to testify to the causation of Plaintiff's accident;

- Jose Zavala, who worked as a foreman at Drumheller and was responsible for Plaintiff, is expected to testify to the circumstances surrounding Plaintiff's injury;

- Gerald Hotzler, a general manager responsible for the implementation and production of the tubing machine, is expected to testify to the safe operating procedures of the machine;

- David Drumheller, Sr. and David Drumheller, Jr. who are the current owners of Drumheller, are expected to testify to their knowledge of the acquisition, ownership, and operations of the "amv 2160" tuber machine; and

- Elliot Parker, who worked as Plaintiff's foreman and shop supervisor, is expected to testify to the circumstances surrounding Plaintiff's accident. Specifically, he will testify that he stood approximately fifteen feet away from Plaintiff during the accident and turned the "amv 2160" machine off after the accident; and

As to witnesses not employed by Drumheller, members of the Peoria area ambulance service and certain employees of OSF St. Francis hospital in Peoria who treated Plaintiff immediately after his accident are expected to testify to the severity of Plaintiff's condition during and after his treatment. Moreover, on information and belief, Plaintiff obtained subsequent treatment and care from Springfield Memorial Hospital. Thus, these witnesses, who also reside in the Central District, will testify to Plaintiff's medical condition. Sandra

6

Taylor, who on information and belief lives in Peoria County and is the mother of Plaintiff's child, is expected to testify as to her knowledge of Plaintiff's quality of life before and after his accident

Moreover, given that no events or omissions giving rise to Plaintiff's claims occurred in the Northern District of Illinois, it is unlikely that Plaintiff will be able to identify a single material witness located within the Northern District. Even if Plaintiff were to find such witnesses, this would not outweigh the fact that the vast majority of the other witnesses, including Plaintiff, are located in the Peoria metropolitan area. Accordingly, the accessibility of witnesses and other evidence weighs in favor of transfer.

      b.    <u>The situs of material events and the relative ease of access to that evidence favors transfer to the Central District.</u>

All the material events surrounding Plaintiff's complaint occurred in Peoria County. There exists not one single piece of material evidence in the Northern District that can aid in the resolution of this case. Plaintiff's accident allegedly occurred as he was performing maintenance on the "amv 2160" machine while employed at Drumheller's Peoria County plant. The Drumheller plant still maintains control over the machine and the machine's records are kept at the Peoria County plant. The close proximity of this evidence to the Central District of Illinois favors transfer.

      c.    <u>The expense of litigating this case in the Northern District of Illinois favors transfer.</u>

As stated, the accident occurred while Plaintiff was employed at Drumheller in Peoria County, Illinois. Thus, the expense for Windmoeller and Plaintiff to litigate this case in the Central District of Illinois, where all Drumheller's employees reside, is significantly less than the expense for the parties to litigate the case in the Northern District of Illinois. In general, the

closer a witness is to the courthouse, the lower the cost of obtaining that witness' presence. See *Dunn*, 846 F. Supp. at 67. As such, transferring this case to the Central District, which is near the location of the majority of this action's witnesses, will reduce the cost of obtaining the presence of witnesses who are willing to travel to testify. Furthermore, Plaintiff's residence is also located in the Central District. Should this case be tried in the Northern District, Plaintiff and Windmoeller will be forced to expend unnecessary costs to travel and transport witnesses and documents to Chicago, rather than simply travelling to the U.S. District Courthouse in Peoria.

C.    **The Interest of Justice Weighs in Favor of Transfer**

The interest of justice is a separate 1404(a) analysis focusing on the efficient administration of the judicial system, rather than on the private considerations of the litigants. *College Craft Companies, LTD. v. Perry*, 8890 F. Supp. 1052 (N.D. Ill. 1995). Factors considered in an interest of justice analysis include the: "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; and all other practical problems that make a trial easy, expeditious, and inexpensive." *Central States, Southeast and Southwest Areas Pension Fund v. Brown*, 587 F.Supp. 1067, 1070-71 (N.D. Ill. 1984).

In this case, all sources of proof are located in the Central District of Illinois. Moreover, all of the potential witnesses reside in the Central District of Illinois and would not be subject to the compulsory process of this Court. These factors would make litigation in the Central District easier and less expensive than if it were tried in the Northern District. Furthermore, the relevant speed of the judicial process weighs in favor of transfer to the Central District of Illinois. The Court should consider whether the transferee district has a lighter docket than the transferor

docket. *See Espino v. Top Draw Freight System, Inc.*, 713 F. Supp. 1243 (N.D. Ill. 1989). Moreover, "the Northern District of Illinois consistently ranks among the most congested district courts nationally." *Id.* Indeed, in 2007, 7,620 cases were filed in the Northern District of Illinois compared with only 1,087 filed in the Central District of Illinois.[4] Furthermore, the Northern District had 7,066 cases pending in 2007 compared with only 961 cases pending in the Central District.[5] These statistics suggest that the prospects of an earlier trial might lie in the Central District of Illinois. As such, this consideration favors transfer.

## IV. CONCLUSION

A movant seeking to have a case transferred has the burden of establishing that the transferee forum is clearly more convenient than the transferor forum. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20. (7th Cir. 1986). Here, the Central District of Illinois is clearly more convenient than the Northern District of Illinois, because all the evidence, the majority of the witnesses, the subject machine, the situs of the incident, and documents relating to Plaintiff's complaint are located there. Moreover, none of the events or omissions giving rise to this cause of action occurred in the Northern District, none of the parties reside here, and no documents or witnesses are located here. Lastly, the trial's relative ease and expense favor transfer to the Central District. Thus, Defendant Windmoeller respectfully requests that this action be transferred to the Central District of Illinois, Peoria Division, pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses and in the interest of justice. Defendant Windmoeller also requests all other appropriate relief.

---

[4] *See Federal Court Management Statistics* (2007), at http://www.uscourts.gov/judbus2007/appendices/C00Sep07.pdf
[5] *Id.*

                                          Respectfully Submitted,

                                        By: _____/s/ Paul W. Johnson_____
                                                  One of the attorneys for the Defendant
                                                  Windmoeller & Hoelscher Corp.

David E. Kawala ARDC# 6191156
Richard J. Keating ARDC# 6229550
Paul W. Johnson, ARDC# 6294360
Swanson, Martin & Bell, LLP
330 North Wabash Avenue, Suite 3300
Chicago, IL 60611
312-321-9100
312-321-0990 FAX
dkawala@smbtrials.com
rkeating@smbtrials.com
pjohnson@smbtrials.com

# EXHIBIT A

PEH

IN THE CIRCUIT COURT OF WILL COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

STEVEN DAVIS, )
)
        Plaintiff, )
v. )
)
WINDMOELLER & HOELSCHER CORPORATION, )
a Foreign Corporation, Individually and )
d/b/a GARANT MASCHINEN, )
)
        Defendant. )

08 L 262

## COMPLAINT AT LAW

NOW COMES the plaintiff, STEVEN DAVIS, by and through his attorneys, DUDLEY & LAKE, LLC, and complaining of the defendant, WINDMOELLER & HOELSCHER CORPORATION d/b/a GARANT MASCHINEN (hereinafter referred to as WINDMOELLER), and states as follows:

### COUNT I
(Negligence v. Windmoeller & Hoelscher Corporation)

1. On and before July 16, 2007, the defendant, WINDMOELLER, a Foreign Corporation was conducting business in Illinois and maintained a sales office in the City of Joliet, County of Will, State of Illinois.

2. On and before July 16, 2007, the defendant, WINDMOELLER, conducted and continues to conduct business in Will County, Illinois at an office located at 306 Harvard Ct., Joliet, IL 60604.

3. On and before July 16, 2007, the defendant, WINDMOELLER, was engaged in the business of designing, manufacturing, distributing, refurbishing, selling and re-selling an industrial machine otherwise known as the "amv 2160 tuber."

EXHIBIT A

4. On and before July 16, 2007, the defendant, WINDMOELLER, manufactured and sold a machine otherwise known as an "amv 2160 tuber" to Drumheller Bag Corporation located at 1114 SW Adams, City of Peoria, County of Peoria, State of Illinois.

5. On, before and subsequent to July 16, 2007, the defendant, WINDMOELLER, performed any and all maintenance, alterations and/or repairs the "amv 2160" at the Drumheller Bag Corporation plant located at 1114 S.W. Adams City of Peoria, County of Peoria, State of Illinois.

6. On and before July 16, 2007, the defendant, WINDMOELLER, controlled and supervised any and all modifications, alterations and/or repairs to the "amv 2160," in the plant located at 1114 SW Adams, City of Peoria, County of Peoria, State of Illinois.

7. On and before July 16, 2007, and at times material hereto, the defendant, WINDMOELLER, had a duty to perform any and all modifications, alterations, and/or repairs to ensure proper function and reasonably safe operation of the "amv 2160."

8. On and before July 16, 2007, the plaintiff, STEVEN DAVIS, was employed by Drumheller Bag Corporation and was working as a tuber running the amv 2160 in the building located at 1114 SW Adams, City of Peoria, County of Peoria, State of Illinois.

9. On July 16, 2007, the plaintiff, STEVEN DAVIS, was working as a "tuber" and was in the process of cleaning and/or "greasing" the rollers of the "amv 2160" at the aforesaid address.

10. At the aforesaid date and time, the plaintiff, STEVEN DAVIS, was performing his duties in a reasonable and foreseeable manner, cleaning and/or greasing the rollers of the "amv 2160" with the assistance of a fellow employee.

11. On July 16, 2007, the plaintiff, STEVEN DAVIS, attempted clean and/or grease the rollers of the machine and as he began to do so, the machine malfunctioned pinching his hand causing severe injuries to Plaintiff's hand.

12. On and before July 16, 2007, the defendant, WINDMOELLER, by and through its agents, representatives and/or employees, was negligent in one or more of the following respects:

    a.    Failed to properly and adequately maintain the "amv 2160;"

    b.    Failed to properly and adequately make necessary alterations to the "amv 2160" prior to its sale and subsequent thereto.

    c.    Failed to properly and adequately make necessary repairs to the "amv 2160" in order to prevent malfunction and/or injury;

    d.    Negligently repaired and altered the "amv 2160" machine;

    e.    Negligently designed, manufactured, distributed and sold the aforesaid "amv 2160" tuber with a defective system to guard against injury to the workman cleaning the rollers on the machine;

    f.    Failed to properly inspect the "amv 2160" to identify any and all defects which were present on the machine;

    g.    Negligently allowed the continued operation of the "amv 2160" subsequent to it continued malfunction;

    h.    Negligently designed, manufactured, distributed and sold the aforesaid "amv 2160" tuber without the proper warnings regarding the risk of injury while cleaning the machine.

    i.    Negligently designed, manufactured, distributed and sold the "amv 2160" tuber without a proper shut off device to clean the roller system;

j.  Was otherwise negligent and careless in maintenance, alteration and/or repair of the "amv 2160."

13. As a proximate result of one or more of the aforesaid negligent acts and/or omissions by the defendant, WINDMOELLER, the plaintiff, STEVEN DAVIS, suffered injuries of a personal and pecuniary nature.

WHEREFORE, the plaintiff, STEVEN DAVIS, demands judgment against the defendant, WINDMOELLER & HOELSCHER CORPORATION d/b/a GARANT in the sum in excess of FIFTY ($50,000) DOLLARS.

## COUNT II
### (Products Liability v. Windmoeller & Hoelscher)

1 - 11. Plaintiff re-alleges and adopts paragraphs 1 - 11 of Count I as and for paragraphs 1 through 11 of this Count II.

12. On and before July 16, 2007, and at all relevant times hereto, it was the duty of the WINDMOELLER, to furnish a product in a reasonably safe condition when put to a use that was reasonably foreseeable.

13. On and before July 16, 2007, and at the time it left the control of the Defendant, WINDMOELLER, the aforesaid "amv 2160" which had been designed, manufactured, distributed, refurbished and sold by Defendants, was in a condition which made it unreasonably dangerous in one or more of the following respects:

a.  The "amv 2160" failed to conform to the specifications originally required and contemplated when purchased by Drumheller;

b.  Negligently designed, manufactured, distributed and sold the aforesaid "amv 2160" tuber with a defective system to guard against injury to the workman cleaning the rollers on the machine;

c. Failed to provide adequate warnings of the dangerous condition and propensities of the "amv 2160";

d. Failed to give adequate instruction on the safe installation and operation of the "amv 2160";

e. The "amv 2160" was defective in its design, build, manufacture, construction, and refurbished condition at the time of the sale to Drumheller;

f. Failed to properly inspect the "amv 2160" to identify any and all defects which were present on the machine;

g. Negligently allowed the continued operation of the "amv 2160" subsequent to it continued malfunction;

h. Negligently designed, manufactured, distributed and sold the aforesaid "amv 2160" tuber without the proper warnings regarding the risk of injury while cleaning the machine;

i. Failed to design, manufacture, distribute and sell the aforementioned "amv 2160" tuber in accordance with the safety standards accepted within the industry;

j. Negligently designed, manufactured, distributed and sold the "amv 2160" tuber without a proper shut off device to clean the roller system;

14. That as a direct and proximate result of one or more of the aforesaid unreasonably dangerous conditions, Plaintiff, STEVEN DAVIS, suffered permanent and severe injuries of a personal and pecuniary nature. Plaintiff will continue to suffer from these injuries in the future.

Pursuant to Illinois Supreme Court Rule 222(b), the undersigned counsel for the plaintiff avers that the money damages herein sought exceed FIFTY THOUSAND ($50,000.00) DOLLARS.

Respectfully submitted,

By: _____
One of the Attorneys for Plaintiff

Kevin J. Golden
Patrick E. Halliday
DUDLEY & LAKE LLC
30 N. LaSalle, Suite 2800
Chicago, Illinois 60602
(312) 263-6300

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| STEVEN DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:08-cv-2244 |
| v. ) | |
| ) | |
| WINDMOELLER & HOELSCHER CORPORATION, ) | Judge John W. Darrah |
| Individually, and d/b/a GARANT MASCHINEN ) | Magistrate Judge Jeffrey Cole |
| ) | |
| Defendant. ) | |

### AFFIDAVIT OF WILLIAM LONG

I, William Long, first duly sworn upon oath, depose and state that if called as a witness in these proceedings would testify competently and based upon my own personal knowledge as to the following facts:

1. I am the Northern Regional Sales Manager for Windmoeller & Hoelscher Corporation operating out of my home in Shorewood, Illinois, and in that capacity I have knowledge concerning the business sales operations of Windmoeller & Hoelscher Corporation in the State of Illinois.

2. In my capacity as the Northern Regional Sales Manager, I sell printing machines to various businesses throughout the State of Illinois on behalf of Windmoeller & Hoelscher Corporation.

3. I am aware of a claim and lawsuit entitled *Steven Davis v. Windmoeller & Hoelscher Corporation* in which the plaintiff claims he was allegedly injured at Drumheller Corporation in Peoria, Illinois performing maintenance on an "amv 2160 tubing" machine.

EXHIBIT B

4.   I only became aware of the claim involving Steven Davis after Windmoeller & Hoelscher informed me. Prior to that, I had never heard of Steven Davis or any facts related to this incident.

5.   I do not sell nor have I ever sold the tubing or bagging equipment that Drumheller uses at its facility in Peoria, Illinois.

6.   On information and belief, Windmoeller & Hoelscher Corporation does not maintain any offices or other facilities in the Northern District of Illinois.

FURTHER AFFIANT SAYETH NOT.

_____
William Long, Northern Regional Sales Manager
for Windmoeller & Hoelscher Corporation

Subscribed and Sworn to
before me this 8th day of
May, 2008.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
JoAnn Rundles
Notary Public, State of Illinois
My Commission Expires June 23, 2008